**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| PENMONT, LLC, and ) | |
| PENMAN GROUP, LLC ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | CIVIL ACTION NO.: 2:08cv93-WC |
| v. ) | |
| ) | |
| BLUE RIDGE PIEDMONT, LLC, BLUE ) | |
| RIDGE CAPITAL, LLC, FRITZ MCPHAIL, ) | |
| and ERIC WILENSKY ) | |
| ) | |
|     Defendants. ) | |

## ERIC WILENSKY'S ANSWER AND DEFENSES

COMES NOW Eric Wilensky ("Mr. Wilensky") and states this,his Answer and Defenses to the Complaint, showing the Court as follows:

### FIRST DEFENSE

This Complaint fails in whole or in part because the Court lacks subject matter jurisdiction over this matter.

### SECOND DEFENSE

Mr. Wilensky responds below to the averments contained in the numbered paragraphs of the Complaint in the same order in which they are presented there.

#### Parties

1.

Mr. Wilensky is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 1 of the Complaint.

2.

Mr. Wilensky is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 2 of the Complaint.

3.

Mr. Wilensky admits the averments contained in paragraph 3 of the Complaint.

4.

Mr. Wilensky admits the averments contained in paragraph 4 of the Complaint.

5.

Mr. Wilensky admits the averments contained in paragraph 5 of the Complaint.

6.

Mr. Wilensky admits the averments contained in paragraph 6of the Complaint.

**Jurisdiction and Venue**

7.

Mr. Wilensky denies that this Court has subject matter jurisdiction as the amount in controversy does not exceed $75,000, excluding interest and costs.  Mr. Wilensky admits that the underlying transaction involves the purchase of realty in Montgomery County.  Mr. Wilensky is without knowledge or information sufficient to form a belief as to the truth of whether its contacts are sufficient to give rise to personal jurisdiction.  Mr. Wilensky denies the remaining averments contained in paragraph 7 of the Complaint.

8.

Mr. Wilensky denies that this Court has subject matter jurisdiction as the amount in controversy does not exceed $75,000, excluding interest and costs.  Mr. Wilensky admits that the underlying transaction involves the purchase of realty in Montgomery County.  Mr. Wilensky is

without knowledge or information sufficient to form a belief as to the truth of whether its contacts are sufficient to give rise to personal jurisdiction. Mr. Wilensky denies the remaining averments contained in paragraph 8 of the Complaint.

**Facts**

9.

Mr. Wilensky admits that in March 2007 Blue Ridge Piedmont was marketing the sale of certain real property located in Montgomery, Alabama. Mr. Wilensky denies that Blue Ridge Capital, LLC ("Blue Ridge Capital") was marketing the sale of this property and states that Blue Ridge Piedmont circulated certain marketing materials mistakenly issued under the Blue Ridge Capital name. Blue Ridge Capital never authorized or circulated those marketing materials. Mr. Wilensky denies the remaining averments contained in paragraph 9 of the Complaint.

10.

Mr. Wilensky states that Blue Ridge Piedmont contacted Eliot Subin regarding the potential purchase of the Steve and Barry's property. Mr. Wilensky denies the remaining averments contained in paragraph 10 of the Complaint.

11.

Mr. Wilensky states that it issued certain marketing materials related to Steve & Barry's to Penman Group, LLC. Mr. Wilensky further states that certain of this information was printed on Blue Ridge Capital, LLC letterhead. Mr. Wilensky denies the remaining averments contained in paragraph 11 of the Complaint.

12.

Mr. Wilensky denies the averments contained in paragraph 12 of the Complaint. By way of further response, Mr. Wilensky states that Blue Ridge Piedmont informed Eliot Subin that it

had the ability to locate conduit financing.  Mr. Subin refused Blue Ridge Piedmont's offer,

stating that he preferred to use bank financing of his choosing.

13.

Mr. Wilensky denies the averments contained in paragraph 13 of the Complaint.  The

Purchase Agreement that was entered into by Penman Group, LLC and Blue Ridge Piedmont

speaks for itself.  See Purchase Agreement dated April 6, 2007, a true and correct copy of which

is attached as Exhibit A.

14.

Mr. Wilensky denies that the plaintiffs paid the defendants $50,000 on April 6, 2007.  By

way of further response, Mr. Wilensky states that, per the Purchase Agreement, Penman Group

paid $50,000 in earnest money to Blue Ridge Piedmont that became non-refundable upon

Penman Group's default under the Purchase Agreement. Mr. Wilensky is without knowledge or

information sufficient to form a belief as to the truth of the remaining averments contained in

paragraph 14 of the Complaint.

15.

Mr. Wilensky denies the averments contained in paragraph 15 of the Complaint.

16.

Mr. Wilensky denies the averments contained in paragraph 16 of the Complaint.  By way

of further response, Mr. Wilensky states that Blue Ridge Piedmont informed Eliot Subin that

there was another potential buyer that was interested in the subject property.  Mr. Subin told Blue

Ridge Piedmont that plaintiffs would consider stepping aside only if they were compensated for

doing so.

17.

Mr. Wilensky denies the averments contained in paragraph 17 of the Complaint.

18.

Mr. Wilensky admits that plaintiffs demanded the return of the earnest money when plaintiffs failed and refused to close on the sale of the subject property. Mr. Wilensky admits that Blue Ridge Piedmont refused to return the non-refundable earnest money as the Purchase Agreement did not provide for its return under such circumstances. Mr. Wilensky denies the remaining averments contained in paragraph 18 of the Complaint.

19.

Mr. Wilensky admits that he is not a licensed real estate broker in the State of Alabama. However, Mr. Wilensky denies that he, or anyone on his behalf, acted as a real estate broker in the sale of the subject property. Mr. Wilensky also denies that he was acting on the plaintiffs behalf in the sale of the subject property. Mr. Wilensky denies the remaining averments contained in paragraph 19 of the Complaint.

## Causes of Action

### *Promissory Fraud, Misrepresentation, and Fraudulent Suppression*

20.

Mr. Wilensky restates his responses to the averments contained in paragraphs 1 through 19 of the Complaint and incorporates them herein by reference as if set forth verbatim.

21.

Mr. Wilensky denies the averments contained in paragraph 21 of the Complaint.

22.

Mr. Wilensky denies the averments contained in paragraph 22 of the Complaint.

23.

Mr. Wilensky denies the averments contained in paragraph 23 of the Complaint.

24.

Mr. Wilensky denies the averments contained in paragraph 24 of the Complaint.

To the extent the WHEREFORE clause requires a response, Mr. Wilensky denies the averments contained therein.

*Breach of Contract*

25.

Mr. Wilensky restates his responses to the averments contained in paragraphs 1 through 24 of the Complaint and incorporates them herein by reference as if set forth verbatim.

26.

Mr. Wilensky denies the averments contained in paragraph 26 of the Complaint.  By way of further response, Mr. Wilensky states Blue Ridge Piedmont entered into a Purchase Agreement with Penman Group, LLC.  No one else was a party to the Purchase Agreement.  Mr. Wilensky further states that, per the Purchase Agreement, Penman Group, LLC paid $50,000 in non-refundable earnest money to Blue Ridge Piedmont.

27.

Mr. Wilensky denies the averments contained in paragraph 27 of the Complaint.

To the extent the WHEREFORE clause requires a response, Mr. Wilensky denies the averments contained therein.

*Unlawful Practice of Real Estate Brokerage – Unjust Enrichment and Reliance Damages*

28.

Mr. Wilensky restates his responses to the averments contained in paragraphs 1 through 27 of the Complaint and incorporates them herein by reference as if set forth verbatim.

29.

Mr. Wilensky denies the averments contained in paragraph 29 of the Complaint.

30.

Mr. Wilensky denies the averments contained in paragraph 30 of the Complaint.

To the extent the WHEREFORE clause requires a response, Mr. Wilensky denies the averments contained therein.

*Agency – Breach of Duty*

31.

Mr. Wilensky restates his responses to the averments contained in paragraphs 1 through 30 of the Complaint and incorporates them herein by reference as if set forth verbatim.

32.

Mr. Wilensky denies the averments contained in paragraph 32 of the Complaint.

33.

Mr. Wilensky denies the averments contained in paragraph 33 of the Complaint.

To the extent the WHEREFORE clause requires a response, Mr. Wilensky denies the averments contained therein.

**THIRD DEFENSE**

This Complaint fails in whole or in part because the Court lacks personal jurisdiction over Wilensky.

## FOURTH DEFENSE

This Complaint fails in whole or in part because Wilensky was not a party to the transaction at issue.

## FIFTH DEFENSE

This Complaint fails in whole or in part because Plaintiffs failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

## SIXTH DEFENSE

This Complaint fails in whole or in part because the Purchase Agreement contains a merger clause, and Plaintiffs have neither pled rescission nor taken steps to rescind the Purchase Agreement.

## SEVENTH DEFENSE

This Complaint fails in whole or in part because Wilensky made no misrepresentations to Plaintiffs.

## EIGHTH DEFENSE

This Complaint fails in whole or in part because Plaintiffs did not justifiably or actually rely upon any representations of Wilensky.

## NINTH DEFENSE

This Complaint fails in whole or in part because Plaintiffs did not enter into a contract with Wilensky.

## TENTH DEFENSE

This Complaint fails in whole or in part because Plaintiffs fail to state a claim upon which relief may be granted.

## ELEVENTH DEFENSE

This Complaint fails in whole or in part because Wilensky was not an agent of Plaintiffs.

This 5th day of March, 2008.

Respectfully submitted,

s/George R. Parker
_____
George R. Parker
One of the Attorneys for Defendant
Eric Wilensky

OF COUNSEL

George R. Parker
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
Email:  gparker@bradleyarant.com

Halsey G. Knapp, Jr.
Jonathan E. Hawkins
FOLTZ MARTIN, LLC
Five Piedmont Center, Suite 750
Atlanta, Georgia 30305-1541
Telephone: (404) 231-9397
Facsimile: (404) 237-1659
Email:  hknapp@foltzmartin.com
Email:  jhawkins@foltzmartin.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of **Eric Wilensky's Answer and Defenses**

was electronically filed with the Clerk of Court using the CM/ECF System which will

automatically send an email notification of such filing to the following attorneys of record:

J. Michael Bowling
Friedman, Leak, Dazzio, Zulanas & Bowling
Post Office Box 43219
Birmingham, AL 35243

This 5th day of March, 2008.

Respectfully submitted,

s/George R. Parker
George R. Parker
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
Email:  gparker@bradleyarant.com

## PURCHASE AGREEMENT

**THIS AGREEMENT**, made this _6TH_ day of April, 2007, by and between **PENMAN GROUP, LLC**, a Florida limited liability company, (hereinafter referred to as "Purchaser") and **BLUE RIDGE PIEDMONT, LLC**, a Georgia limited liability company (hereinafter referred to as "Seller").

### W I T N E S S E T H :

**FOR AND IN CONSIDERATION** of the sum of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) (together with any additional deposit made pursuant to Paragraph 4 hereof, collectively hereinafter referred to as the "Earnest Money"), paid by Purchaser to Seller on the date hereof, which amount shall be non-refundable, except as otherwise set forth herein, and in further consideration of Ten and No/100 Dollars ($10.00), paid in hand, and the covenants and agreements contained in this Agreement, the receipt, sufficiency and adequacy of which are hereby acknowledged, it is hereby covenanted and agreed between the parties hereto as follows:

1.   <u>PURCHASE AND SALE</u>.  Upon all the terms and conditions hereinafter set forth, Seller shall sell and Purchaser shall purchase from Seller all that tract or parcel of land lying and being in Montgomery, Montgomery County, Alabama, and being more particularly described on <u>Exhibit "A"</u> attached hereto and by this reference made a part hereof, together with all rights, easements, appurtenances, air rights, mineral rights and hereditaments thereunto belonging (hereinafter collectively referred to as the "Property").  A portion of the Property is leased to Steve & Barry's Alabama, LLC ("S&B") pursuant to that certain Lease Agreement, by and between Montgomery Mall Associates Limited Partnership, a Delaware limited partnership and S&B, dated December 27, 2004 (the "Lease").  Purchaser acknowledges that Seller is not the current owner of the Property but rather has the contractual right, in accordance with a separate agreement ("Purchase Contract"), to Purchase the Property from the fee owner of the Property ("Fee Owner") as of the date of Closing (as hereinafter defined).  Seller's obligations hereunder are conditioned upon the consummation of the transaction contemplated by the Purchase Contract.  At the request of Seller, Purchaser will cooperate to accept a direct transfer of the Property from Fee Owner.  If the aforementioned condition to Closing is not met on or before the Closing Date despite the commercially reasonable, good faith efforts of Seller and Purchaser hereunder, then the parties hereto shall have no remedies against each other (except for the indemnity in Section 5 below), the Earnest Money shall be refunded to Purchaser (less the sum of $100.00, which shall be retained by Seller as independent consideration for the transaction contemplated hereby) and this Agreement will terminate.

2.   <u>PURCHASE PRICE AND METHOD OF PAYMENT</u>.  The Purchase Price for the Property shall be FIVE MILLION and NO/100 Dollars ($5,000,000.00).  The full purchase price, less a credit for any Earnest Money applied to the purchase price pursuant to the terms of Paragraph 4 herein, shall be paid to Seller at Closing, by wire transfer to an account designated by Seller or by certified or cashier's check payable to the order of Seller.

BR 000001

3.    TITLE. Seller shall convey title to the Property subject to all matters of record and all matters which would be revealed by a current and accurate survey. Notwithstanding the foregoing, Seller shall cause all monetary liens and encumbrances placed on the Property by Seller to be paid off in full at Closing.

Further notwithstanding the foregoing, Purchaser acknowledges that Seller, along with Fee Owner, is currently seeking to have the Property properly Subdivided (as hereinafter defined). It shall be a condition to Closing that the Property be Subdivided. As used in this Agreement, the term "Subdivided" shall mean the action which causes the Property to be designated as a separate tax parcel; provided, however, the parties hereby acknowledge and agree that the jurisdiction in which the Property is located procedurally recognizes the creation of a new tax parcel upon the recording of a conveyancing instrument with a new legal description separate and distinct from the original larger parcel even though the new tax identification number may be issued several months after recordation as a result of administrative delays arising in connection with the recordation of deeds by the Montgomery County Courthouse.

4.    CLOSING. Purchaser and Seller shall consummate and close the sale contemplated by this Agreement ("Closing") on May 9, 2007 (the "Closing Date"). The Closing shall be held at the offices of Seller's attorney as set forth in Paragraph 10 hereof. Notwithstanding the foregoing, on May 1, 2007, Purchaser shall make an additional Earnest Money deposit to Escrow Agent in the amount of One Hundred Thousand and No/100 Dollars ($100,000.00), which amount shall be non-refundable.

At Closing hereunder, Seller shall convey the Property to Purchaser by Special Warranty Deed together with such other documents as may be reasonably necessary to close the transaction contemplated hereby, including, without limitation, an assignment of the Lease. Seller shall also deliver to Purchaser at Closing an affidavit establishing to Purchaser's reasonable satisfaction that this transaction is not subject to the withholding requirements of Section 1445(a) of the Internal Revenue Code. Seller shall pay the State of Alabama transfer tax on said Special Warranty Deed. At Closing the Earnest Money, together with all interest earned thereon, shall be applied against the Purchase Price. In the event that ad valorem taxes for the current year are unknown as of the Closing Date, the proration of taxes will be based upon ad valorem taxes for the previous year and provisions will be made at Closing for the adjustment of the proration when ad valorem taxes for the current year are determined. All items of income and expense relating to the Property (if applicable) shall be pro-rated as of midnight of the day before Closing. Possession of the Property, subject to the rights of S&B under the Lease, shall be delivered to Purchaser upon Closing. Seller shall pay all costs and expenses incurred by Seller in connection with the Closing, including, without limitation, its attorney's fees. Purchaser shall pay its own Closing costs, including but not limited to recording fees and Purchaser's attorney's fees. Purchaser shall cause funds in the amount of the purchase price, subject to the above credits and prorations, to be received by Seller before 12:30 p.m., E.S.T. on the Closing Date.

5.    INSPECTION. Commencing upon the date of this Agreement, Purchaser, subject to the rights of S&B, shall have the right to enter the Property personally or through agents, employees and contractors for the purposes of making surveys of same and in general making

non-invasive and non-destructive tests, analyses and investigations of the Property. Any invasive testing or environmental testing beyond a non-invasive Phase I environmental inspection shall be subject to the prior approval of Seller, which may be withheld in Seller's sole discretion. Purchaser hereby agrees to indemnify and save Seller and Fee Owner harmless from any claim or liability that may arise against Seller by reason of such surveys, tests, analyses and investigations.

     6.    <u>Intentionally Omitted.</u>

     7.    <u>PURCHASER'S DEFAULT.</u> If the purchase of the Property is not consummated in accordance with the terms and conditions of this Agreement on account of default or breach by Purchaser, the Earnest Money and all interest earned thereon shall be paid to Seller as full liquidated damages for Purchaser's default hereunder. Purchaser and Seller acknowledge that it would be difficult or impossible to ascertain the actual damages suffered by Seller as a result of any default by Purchaser and agree that such liquidated damages are a reasonable estimate of such damages

     8.    <u>SELLER'S DEFAULT.</u> If the purchase of the Property is not consummated in accordance with the terms and conditions of this Agreement on account of default or breach by Seller, the Earnest Money and all interest earned thereon shall be returned to Purchaser upon demand and Purchaser may thereafter avail itself of the remedy of specific performance as Purchaser's sole and exclusive remedy; provided, however, Purchaser shall commence any such suit for specific performance within sixty (60) days of the date Seller defaults, failing which, Purchaser shall not be entitled to bring an action for specific performance; and further provided, however, in the event specific performance is unavailable as a remedy to Purchaser due to Seller's intentional misconduct, then Purchaser shall be entitled to recover its actual out-of-pocket expenses up to an amount not to exceed $20,000.00. Seller shall make commercially reasonable, good faith efforts to meet its obligations hereunder.

     9.    <u>BROKERAGE INDEMNITY.</u> Seller and Purchaser each warrant to the other that they have not used any real estate broker or agent in connection with this transaction and each agrees to indemnify the other against all loss, cost, damage or expense incurred by the non-indemnifying party arising out of the use by the indemnifying party of any real estate broker or agent in connection with the purchase and sale of the Property.

     10.    <u>NOTICES.</u> All notices, requests, demands, and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be given to the party at its address or facsimile number set forth below. Each notice shall be deemed to have been duly given and received: (a) as of the date and time the same are personally delivered with a receipted copy, (b) if given by facsimile, when the facsimile is transmitted to the party's facsimile number specified below and confirmation of complete receipt is received by that transmitting party prior to 5:00 p.m. E.S.T. or the next Business Day (any day other than a Saturday, Sunday or a Federal holiday) if not confirmed during normal business hours; or (c) if given by a nationally recognized or reputable overnight delivery service within one (1) day after deposit with such delivery service.

BR 000003

Seller:

Blue Ridge Piedmont, LLC
c/o Blue Ridge Capital, LLC
340 East Paces Ferry Road
Atlanta, GA 30305
Attn: Fritz R. McPhail
Telephone:  404-364-9094
Facsimile: 404-364-9095

With copy to:

Foltz Martin, LLC
5 Piedmont Center
Suite 750
Atlanta, Georgia 30305
Attn: J. Marshall Martin III, Esquire
Telephone:  404-231-9397
Facsimile: 404-237-1659

Purchaser:

Penman Group, LLC
c/o Eliot Subin
540 Commerce Street
Thornwood, New York 10594
Telephone:  914-747-1923
Facsimile: 914-747-1928

With a copy to:

Stephen W. Stallcup , Esq.
Maynard, Cooper & Gale, P.C.
2400 AmSouth/Harbert Plaza,
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone: 205-254-1000
Facsimile: 205-254-1999

Any party may change said address by giving the other parties hereto notice of such change of address.

11.    MISCELLANEOUS.  This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, legal representatives, successors and assigns.   Time is of the essence of this Agreement.   This Agreement constitutes the sole and entire agreement between the parties hereto, and no

BR 000004

modification hereof shall be binding unless set forth in writing signed by Seller and Purchaser. The Paragraph titles are inserted herein only as matter of convenience and for reference and in no way define, limit or describe the scope or intent of this Agreement nor in any way affect this Agreement. The laws of the State of Alabama shall govern the interpretation, validity and enforcement of this Agreement, and if any provision herein should be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not be affected thereby. Purchaser acknowledges that the Property is being sold "AS-IS" without representation or warranty except as expressly set forth herein. This Agreement shall be non-binding until executed by both parties. Purchaser shall be entitled to assign its right, title and interest herein to any corporation, partnership, limited liability company, or other entity controlled by Purchaser for the purpose of acquiring any portion of or all of the Property, including, without limitation, Penmont, LLC. an Alabama limited liability company to be formed by Purchaser. Any other assignment by Purchaser shall be made only with the prior written consent of Seller, which consent may be withheld for any reason or for no reason. Any assignee shall expressly assume all of Purchaser's duties, obligations and liabilities hereunder, and a copy of such assignment and assumption shall be provided promptly to Seller. In the event of an assignment, the Purchaser named in this Agreement shall remain obligated for all of the obligations and liabilities of Purchaser to Seller arising under this Agreement. Seller shall have the right to freely assign its interest under this Agreement without the prior written consent of Purchaser. This Agreement may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Agreement.

### [SIGNATURES CONTAINED ON FOLLOWING PAGE]

BR 000005

IN WITNESS WHEREOF, the undersigned parties have set their hands and seal from and after the day and year of the full execution thereof.

SELLER:

BLUE RIDGE PIEDMONT, LLC, a
Georgia limited liability company

By: _____
       Fritz McPhail, its Manager

(SEAL)

PURCHASER:

PENMAN GROUP, LLC., a Florida limited
liability company

By: _____ (SEAL)
Name: _____
Title: _____

BR 000006

EXHIBIT "A"

LEGAL DESCRIPTION



BR 000007