IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
PENMONT, LLC and          )
PENMAN GROUP, LLC,        )
                          )
     Plaintiffs,          )
                          )        CIVIL ACTION NO.
     v.                   )        2:08cv93-MHT
                          )          (WO)
BLUE RIDGE PIEDMONT, LLC, )
BLUE RIDGE CAPITAL, LLC,  )
FRITZ MCPHAIL, and        )
ERIC WILENKSY,            )
                          )
     Defendants.          )
```

OPINION AND ORDER

Plaintiffs Penmont, LLC and Penman Group, LLC bring

this lawsuit against defendants Blue Ridge Piedmont,

LLC, Blue Ridge Capital, LLC, Fritz McPhail, and Eric

Wilensky, claiming state-law fraud, breach of contract,

and unlawful practice of real-estate brokerage, all

arising out of a single aborted commercial real-estate

transaction.[1]  Blue Ridge Piedmont has filed a breach-

─────────────

1.  Although the complaint includes a fourth count
for breach of agency, counsel clarified in pretrial
conference that this was not a separate claim.

of-contract counterclaim against Penman Group for fees it paid to third parties on plaintiffs' behalf.

The case is before the court on defendants' motion for summary judgment on all claims, including the counterclaim, in their favor.  The motion is granted in part and denied in part for the reasons that follow.


## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

In the spring of 2007, defendants approached Penman Group with a prospective real-estate deal in which Blue Ridge Piedmont would sell Penman Group a portion of the Montgomery Mall in Montgomery, Alabama. The tenant of the property was a franchise known as Steve & Barry's.

Defendants did not own the property, but had an option to purchase the property from the owner, Haywood Whichard, with whom defendants had a longstanding relationship. Whichard offered to sell defendants the property at a reduced price if they would put up $ 50,000 non-refundable earnest-purchase money. After negotiating the price, defendants agreed to purchase the property, on the condition they could, in turn, find a buyer willing to purchase the property. Defendants paid Whichard the $ 50,000 after they had contacted potential buyers and plaintiffs expressed interest in the property.

Defendants, who had done prior business with plaintiffs' managers, sent plaintiffs materials about

3

the property and the Steve & Barry's franchise.   The
materials were issued under the name of Blue Ridge
Capital, LLC, which employed Wilensky and McPhail.

During a conference call shortly thereafter,
defendants indicated they would assist plaintiffs in
conducting "due diligence" and further indicated that
any fees for these services would be included in the
agreed-upon transaction price.   Around this time,
defendants also informed plaintiffs that they had lined
up a lender who could provide financing and that this
lender was familiar and comfortable with the franchise.
Plaintiffs indicated a desire to find their own
financing.

On April 6, 2007, Penman Group and Blue Ridge
Piedmont executed a "Purchase Agreement," which
outlined how the transaction would proceed.   First,
Blue Ridge Piedmont would acquire the property from its
current owner.   It would then immediately sell the
property to Penman Group.   The agreement also provided
that Penman Group would pay $ 50,000 in earnest money

4

to Blue Ridge Piedmont and that this money would be retained by Blue Ridge Piedmont as liquidated damages if the transaction were not completed.  A merger clause provided that the written agreement was the complete and final agreement of the parties, and another clause stated that the property was being purchased "as-is."

Also around this time, defendants told plaintiffs that, regardless of the language in the purchase agreement, defendants would return the earnest money if the deal fell through.  The parties dispute the exact terms of this agreement.

After the purchase agreement was signed, the parties continued to work to complete the transaction. At some point, defendants agreed to obtain certain reports for plaintiffs with the understanding that they would be reimbursed; the precise terms of this agreement are disputed.

Meanwhile, plaintiffs applied for a loan from Bank Independent, and were refused.  When it became apparent that Bank Independent would not issue a loan,

defendants put plaintiffs in touch with a mortgage broker and sent plaintiffs a proposed agreement to compensate defendants for their assistance in securing financing. Plaintiffs never signed the agreement, but maintain that the parties agreed that they would work out compensation at a later time if the financing came through.

Plaintiffs claim that they were not able to obtain financing from defendants' lender because, during a conference call regarding the loan application, Wilensky stated that the Steve & Barry's franchise was in a "hostile tenant relationship" with the landlord, and this statement caused the bank to refuse to finance the transaction on favorable terms. Wilensky denies making any such statement. Plaintiffs contend that defendants misled them regarding the quality of the franchise as a tenant.

A short time later, Penman Group indicated that it was not willing to move forward with the transaction. The deal fell apart, and Blue Ridge Piedmont retained

the purchase money.  Plaintiffs then filed this lawsuit
to recover the money and other expenses associated with
the   transaction.   Blue   Ridge   Piedmont   filed   a
counterclaim for $ 19,428.75 against Penman Group for
breach of an oral contract providing, according to Blue
Ridge Piedmont, that Penman Group would reimburse it
for certain third-party reports.


### III.   DISCUSSION

### A.   Penmont's claims

Defendants challenge whether Penmont may bring <u>any</u>
claims, on the ground that it was not a party to the
purchase   agreement   or   otherwise   a   part   of   the
transaction.   The complaint alleges that Penmont was
the "putative assignee of Penman Group for the purpose
of this transaction."   Compl. ¶ 2.   However, Penmont
did   not   argue   it   was   Penman's   assignee   in   its
opposition to defendants' motion for summary judgment.[2]

_____

    2.  Nor is there any evidence before the court that
Penmont was the assignee of Penman Group.

7

Because Penmont did not raise the argument in opposition to defendants' motion to dismiss, the argument is deemed abandoned. See Brasseler, U.S.A I, L.P. v. Stryker Sales Corp. 182 F.3d 888, 892 (11th Cir. 1999) (district court need not consider assertions made in pleadings but not in opposition to a motion for summary judgment); Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (claim not raised in cross motions for summary judgment was properly treated as abandoned).

Penmont having abandoned any argument that it was the assignee of Penman, the court must conclude that there is no evidence, or even argument, that Penmont was a party to the disputed transaction. Thus, summary judgment will be granted on all of Penmont's claims.

### B.  Penman's claims

### 1.  Unlawful-practice-of-real-estate-brokerage claim

Penman contends that the purchase agreement is void because defendants were acting as unlicensed real-estate brokers in violation of 1975 Ala. Code § 34-27-30 when they entered into the transaction. Penman argues that defendants sought valuable consideration (the profit they would make on the transaction) in exchange for their work closing the sale of the Steve & Barry's property.  Defendants counter that they were not acting as real-estate brokers and that, in any case, they fell within an "owner-seller" exception to the statute because the purchase agreement identified Blue Ridge Piedmont as the seller.  <u>See</u> 1975 Ala. Code § 34-27-2(b)(1) (exempting "[a]ny owner in the managing of, or in consummating a real-estate transaction involving, his or her own real estate or the real estate of his or her spouse or child or parent" from licensing requirement).

9

Contrary to defendants' assertions, the evidence reflects that none of the defendants owned the property when they approached Penman or when the purchase agreement was signed. Defendants' plan was to purchase the property only if they could find another buyer, and defendants never did purchase the property.

However, the court need not resolve the question of ownership, for even if defendants were acting as unlicensed real-estate brokers, the purchase agreement would not be void on that basis. The law does not void every contract entered into by an unlicensed real-estate broker, but rather only those providing for compensation of the unlicensed broker. See Knight v. Watson 127 So. 841, 842 (Ala. 1930) (contracts of unlicensed real-estate brokers are "illegal, void, and unenforceable in actions for the recovery of compensation and the like"); Faulkner v. Stapleton Ins. & Realty Corp., 266 Ala. 437, 438, 96 So.2d 761, 762 (Ala. 1957) (unlicensed real-estate broker may not enforce contract for commission); Dillard v.

10

Pan-American Investments, Inc., 347 So.2d 990, 991
(Ala. 1977) (same).  Thus, even if Penman were able to
show that defendants had violated the statute, it would
only be able to void an agreement for compensation.
Penman cannot plausibly contend that the purchase
agreement was a contract creating a brokerage agreement
or that the $ 50,000 earnest-purchase money was paid as
compensation for brokerage services.

Accordingly, summary judgment will be granted on
Penman Group's claim for unlawful practice of real-
estate brokerage.

## 2.  Fraud claims

Penman asserts that defendants engaged in
fraudulent misrepresentation and fraudulent suppression
of facts regarding the financial health of Steve &
Barry's and the franchise's relationship with the
landlord of the property and that these fraudulent
assertions or omissions induced Penman to enter into
the purchase agreement.  Defendants deny making such

11

representations or suppressing any information, and further contend that the "as-is" clause in the purchase agreement precludes either fraud claim.

Defendants' contention regarding the as-is clause is unavailing because Penman's fraud claims arise out of representations regarding Steve & Barry's, not the property. The as-is clause provides: "Purchaser acknowledges that the <u>Property</u> is being sold 'AS-IS' without representation or warranty except as expressly set forth herein." Def. Exh. "B" at 5 (emphasis added). The plain language of the clause refers to only the property itself; it does not refer to Steve & Barry's or any other tenant. Thus, the as-is clause cannot properly be read to defeat Penman's fraud claim arising out of representations regarding Steve & Barry's. The court therefore turns to the merits of the fraud claims.

### a. Fraudulent misrepresentation

To make out a claim for fraudulent misrepresentation, Penman must show: "(1) that the representation was false, (2) that it concerned a material fact, (3) that it relied on the false representation, and (4) that actual injury resulted from that reliance." Consol. Constr. Co. v. Metal Bldg. Components, L.P., 961 So. 2d 820, 825 (Ala. 2007) (quoting Boswell v. Liberty Nat'l Life Ins. Co., 643 So. 2d 580, 581 (Ala. 1994)).

Penman contends that defendants represented that Steve & Barry's was in good financial condition and a good tenant; that these representations were false; that Penman relied on these representations in entering into the transaction; and that Penman lost the earnest money and lender's fee, as well as other expenses, as a result. Defendants deny making such representations and argue further that any statements they made were

statements of opinion that cannot support a fraud claim.

Penman has put forward sufficient evidence for this claim to proceed. The financial well-being and quality of the Steve & Barry's franchise as a tenant would plainly be a material fact upon which Penman might rely in making the decision to enter into the transaction, and it is beyond dispute that, in trying to close the transaction, Penman spent money that it would not otherwise have spent. The conflicting testimony of the parties (as to whether defendants made the disputed representations, the content of such representations, whether the representations were false, and whether Penman relied on any such representations) thus precludes summary judgment on this claim. For the same reason, defendants' argument that their statements were statements of opinion cannot be decided at this stage. Although statements of opinion will not support a fraud claim, <u>Fincher v. Robinson Bros. Lincoln-Mercury, Inc.,</u>

**14**

583 So. 2d 256, 259 (Ala. 1991), whether a particular

statement is opinion

> "depends upon all the circumstances of
> the particular case, such as the form
> and    subject    matter    of    the
> representation   and   the   knowledge,
> intelligence   and   relation   of   the
> respective parties. The mere form of
> the representation as one of opinion
> or fact is not in itself conclusive,
> and in cases of doubt the question
> should be left to the jury."

Harrell v. Dodson, 398 So. 2d 272, 274-75 (Ala. 1981)

(citations  omitted).   Because  there  are  significant

factual disputes in this case about what was said and

when, this argument belongs before the jury.   Summary

judgment will therefore be denied on Penman Group's

fraudlent-misrepresentation claim.


### b.  Fraudulent
### suppression

Penman also asserts a fraudulent-suppression claim

against defendants.   A plaintiff making such a claim

must demonstrate: "(1) that the defendant had a duty to

disclose   material   facts;   (2)   that   the   defendant

15

concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act [or to refrain from acting]; and (4) that the defendant's action resulted in harm to the plaintiff." <u>Bethel v. Thorn</u>, 757 So. 2d 1154, 1162 (Ala. 1999) (quoting <u>Booker v. United American Ins. Co.</u>, 700 So. 2d 1333, 1339 n. 10 (Ala. 1997)).

Penman contends that defendants acted as Penman's agents, which gave rise to a duty to disclose that Steve & Barry's was in poor financial health and had a poor relationship with the landlord; and that defendants never made such disclosures. Penman further contends that, had it known this information, it would not have signed the purchase agreement and incurred expenses associated with this transaction.

Whether defendants had a duty to disclose is a question of law. <u>Barnett v. Funding Plus of America, Inc.</u>, 740 So. 2d 1069, 1074 (Ala. 1999). A duty to disclose may be created either by a "confidential relations[hip]" between the parties, or from the

16

"particular circumstances of the case."  1975 Ala. Code 6-5-102.  Penman asserts that, in this case, the duty arose from a confidential relationship; it asserts that defendants acted as Penman's agents in the transaction. An agency relationship, which may be implied, arises from the consent of the parties.  <u>Fisher v. Comer Plantation, Inc.</u>, 772 So. 2d 455, 466 (Ala. 2000). Consent may be implied "by deductions or inferences from the other facts and circumstances of the particular case, including the words and conduct of the parties."  Penman has not produced sufficient evidence to infer consent.  At most, Penman has shown that the parties worked together to try to complete the transaction under a pressing deadline.  Penman makes much of defendants' assistance in seeking financing, as well as defendants' proposal that they be compensated for this assistance.  However, this assistance was provided <u>after</u> the purchase agreement was signed and thus is not evidence of the parties' relationship (and corresponding duty to disclose) <u>prior</u> to the signing of

17

the purchase agreement.   Thus, no agency relationship was created.

Without an agency relationship, Penman's claim that defendants had a duty to disclose must fail. Alabama's "bright-line" rule is that, "in commercial transactions involving parties to arm's length negotiations[,] ... [t]he parties have no general obligation to disclose" absent specific and direct questions from the other party.   <u>Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.</u>, 932 So. 2d 883, 892 (Ala. 2005) (quotations and citations omitted).   Penman does not assert that it made specific inquiries that gave rise to a duty to disclose, nor has it shown anything else that would remove the transaction from the purview of the bright-line rule.

Because Penman cannot show that defendants were under any obligation to disclose, it cannot make out a claim for fraudulent suppression.   Accordingly, summary judgment will be granted on Penman's fraudulent-suppression claim.

18

### 3. Breach-of-contract and fraudulent-promise claims

Penman also contends that defendants breached an oral agreement to return the $ 50,000 earnest money if the transaction was not completed and alternatively that defendants fraudulently promised to return the money. Defendants concede that they promised to return the earnest money, but contend that the promise was conditioned on closing the deal with another party.

### a. Breach of contract

To make out a breach-of-contract claim, Penman must show (1) a valid contract binding the parties, (2) its own performance under the contract, (3) the nonperformance of the defendants, and (4) damages. See State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999). Penman has produced evidence that it agreed to enter into the purchase agreement in exchange for a promise that the earnest money would be returned if the deal did not close; it signed the purchase

agreement; defendants failed to return the purchase money; and Penman lost the value of the purchase money.

Defendants contend that the oral agreement is defeated by the merger clause in the purchase agreement. Although a merger clause in a valid contract creates "a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties," Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001), in this case Penman contends that it was fraudulently induced into entering the written contract that contains the merger clause. Until the jury resolves whether Penman was fraudulently induced into entering that contract and thus whether the contract is void in all or part, defendants cannot rely on the merger clause to defeat Penman's claim that the oral contract was breached.[3]

_____

3. Because there remains a dispute as to when the promise was made and under what conditions, the court does not reach defendants' argument that, if the promise to return the money was made after the agreement was

(continued...)

20

Thus, summary judgment will be denied on Penman's breach-of-contract claim.

### b. Promissory fraud

Penman claims, alternatively, that the defendants fraudulently promised to return the earnest money if the transaction were not completed.

A claim for promissory fraud arises out of a defendant's promise to act or not to act. Ex parte Michelin North America, Inc., 795 So. 2d 674, 678 (Ala. 2001). Here, that promise is defendants' allegedly unconditional promise to return the $50,000 if the deal did not go through. To make out a claim for promissory fraud, a plaintiff must show: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the

_____

(...continued)
signed, Penman provided no consideration in exchange for the promise and it is unenforceable.

misrepresentation." <u>S.B. v. St. James Sch.</u>, 959 So. 2d 72, 101 (Ala. 2006) (quotations and citations omitted). In addition, the plaintiff must show that, "at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and ... that the defendant had an intent to deceive." <u>Id</u>. Such intent to deceive may be proven through circumstantial evidence. <u>Byrd v. Lamar</u>, 846 So. 2d 334, 343 (Ala. 2002).

Penman has put forth testimonial and documentary evidence from which a reasonable juror could conclude that defendants promised to return the purchase money unconditionally; that Penman relied on such promise in entering into the purchase agreement; that defendants did not intend to return the money if the deal fell through; and that defendants acted with the intent to deceive because they promised to return the money unconditionally but did not intend to return it unless they recovered the $ 50,000 that they paid to the original seller.

22

Accordingly, summary judgment will be denied on Penman's promissory-fraud claim.

### C.  Blue Ridge Piedmont's counterclaim

Defendants also seek summary judgment on Blue Ridge Piedmont's counterclaim for $ 19,428.75, for breach of contract.  Blue Ridge Piedmont asserts that the parties agreed that it would obtain certain third-party reports and be reimbursed by Penman; that it obtained such reports; and that Penman has failed to pay the cost of the reports.  Penman contends that any such agreement was conditioned on the transaction closing.

To make out their claim, defendants must show (1) a valid contract binding the parties, (2) their own performance under the contract, (3) the nonperformance of the [other party], and (4) damages.  See State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999).  This claim cannot be resolved on summary

judgment, for the parties dispute the terms of any such oral agreement.  Summary judgment will therefore be denied on Blue Ridge Piedmont's counterclaim.


****


For the foregoing reasons, it is ORDERED as follows:

(1) The motion for summary judgment on behalf of defendants Blue Ridge Piedmont, LLC, Blue Ridge Capital, LLC, Fritz McPhail, and Eric Wilensky (Doc. No. 50) is denied on (a) plaintiff Penman Group, LLC's claims for fraudulent misrepresentation, breach of contract, and promissory fraud and (b) defendant Blue Ridge Piedmont, LLC's counterclaim for breach of contract.  These claims will go to trial.

(2) Said motion is granted in all other respects.

DONE, this the 8th day of April, 2009.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE